THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

A.H., *a minor, by her next friend and mother*, Tracey Handling, :
:
:
Plaintiff, :
:
v. : 3:17-CV-391
: (JUDGE MARIANI)
MINERSVILLE AREA SCHOOL :
DISTRICT, et al., :
:
Defendants. :

## MEMORANDUM OPINION

### I. INTRODUCTION

This case arises out of a claim that Defendant, Minersville Area School District, prohibited Plaintiff, an eight-year-old girl attending Minersville Elementary School, from using the girl's bathroom while at school or at school sponsored events. The dispute centers on the allegations that Defendant had a policy dictating that children must use the bathroom corresponding to the sex listed on the student's birth certificate and Plaintiff—who uses a female name, dresses in clothing traditionally associated with females, and presents herself to the world as a female—was assigned the sex of male at birth. Plaintiff's Amended Complaint asserts that the school district's policy of prohibiting her from using the girl's bathroom has violated her rights under both Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, and the Fourteenth Amendment. (Doc. 10). Presently before

the Court is Defendant's Motion to Dismiss. (Doc. 11). For the reasons that follow, the Court will deny Defendant's Motion.

## II. FACTUAL ALLEGATIONS

Plaintiffs' Amended Complaint alleges the following facts which, for the purposes of resolving Defendant's Motion, the Court takes as true:

Plaintiff, A.H., is an eight-year-old girl currently enrolled in the second grade at Minersville Elementary School. (Doc. 10 at ¶ 2). Plaintiff is transgender, "meaning that she was assigned the sex of male at birth but she has a female gender identity." (*Id.* at ¶ 3). While in kindergarten, Plaintiff was diagnosed with gender dysphoria, a condition recognized in the fifth edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders which, according to the Amended Complaint, "refers to clinically significant distress that can result when a person's gender identity differs from the person's sex assigned at birth." (*Id.* at ¶¶ 4-5). Under the care of a pediatric psychologist, Plaintiff and her family have been exploring ways for Plaintiff to express her gender identity at home, in school, and in the community. (*Id.* at ¶¶ 17-18).

In 2014, Plaintiff enrolled in kindergarten at the Minersville Elementary School. (*Id.* at ¶ 1). Minersville Elementary School is part of the Minersville Area School District, a public school district in Schuylkill County, Pennsylvania, that is the recipient of federal financial assistance. (*Id.* at ¶¶ 7, 103). Since beginning kindergarten in 2014, Plaintiff has continuously presented herself both in and out of school as a female. (*Id.* at ¶¶ 21-23).

2

Plaintiff uses a female name, dresses in clothing traditionally associated with females, is addressed using female pronouns, and is known to her classmates as a female student. (*Id.* at ¶¶ 1, 23).

Before the start of the 2014 school year, Plaintiff's mother, Tracey Handling, requested that the school allow Plaintiff to use the girl's bathroom but was told by the district superintendent, Carl McBreen, that the school could not make such an allowance because of the privacy rights of the other students. (*Id.* at ¶¶ 12, 24-25). The school, however, did allow Plaintiff the option of using a unisex bathroom. (*Id.* at ¶ 26). Because the kindergarten classroom has a single use bathroom for use by all the students, bathroom usage was not a significant problem for Plaintiff during the 2014-2015 school year except for one incident in May of 2015. (*Id.* at ¶¶ 29-30, 33). While on a field trip, school staff made Plaintiff wait while all the other students used the bathroom. (*Id.* at ¶ 34). After the male students were finished, a teacher cleared the boy's bathroom of students and then made Plaintiff use it by herself while her classmates waited. (*Id.* at ¶¶ 34-35). The incident upset Plaintiff and resulted in some of her classmates asking her why she, as a girl, was using the boy's bathroom. (*Id.* at ¶¶ 37-38).

When Plaintiff's mother questioned the school's principal, James Yacobacci, about the incident, he informed Ms. Handling that it was school policy that a child must use the bathroom that corresponds with the sex listed on the child's birth certificate. (*Id.* at ¶¶ 14, 42). During the conversation, Principal Yacobacci stated that it was his "job to protect all of

the students from [Plaintiff]." (*Id.* at ¶ 43). Despite requesting a copy of the school's bathroom policy from Superintendent McBreen and Principal Yacobacci, Plaintiff's mother was never shown a policy that would prohibit Plaintiff from using the girl's bathroom. (*Id.* at ¶¶ 57-58).

Before the 2015-2016 school year began, Plaintiff's mother once again requested that the school allow Plaintiff to use the girl's bathroom while at school. (*Id.* at ¶ 51). The school, through Superintendent McBreen, denied Plaintiff's request. (*Id.* at ¶ 52). Superintendent McBreen expressed that he did not believe there would be much acceptance from other parents if Plaintiff was allowed to use the girl's bathroom and added that "Minersville isn't ready for this." (*Id.* at ¶¶ 53-54, 56). Soon thereafter, while giving a school tour to Ms. Handling, Principal Yacobacci repeatedly referred to Plaintiff using male pronouns despite being corrected by Plaintiff's mother. (*Id.* at ¶ 60).

Once Plaintiff began grade school, there was no single use bathroom in her classroom, and Plaintiff began using the unisex bathroom in the school. (*Id.* at ¶¶ 68-69). In February of 2016, staff from the Bradbury-Sullivan LGBT Community Center provided training to the Minersville Area School District on the topic of transgender students and the requirements of Title IX with respect to bathroom use policies. (*Id.* at ¶¶ 63-66). In March of 2016, Principal Yacobacci told Ms. Handling that for Plaintiff to be allowed to use the girl's bathroom while on a school field trip, Ms. Handling would have to accompany Plaintiff. (*Id.* at ¶¶ 70-73).

4

On May 27, 2016, soon after the Department of Justice and the Department of Education issued a guidance document on how schools should accommodate transgender students with respect to bathrooms, Plaintiff's mother was told by Superintendent McBreen that Plaintiff would now be allowed to use the girl's bathroom. (*Id.* at ¶¶ 82-83). Plaintiff began using the girl's bathroom during the last week of the 2015-2016 school year. (*Id.* at ¶ 85). The school, however, has not created any policy on bathroom access for transgender students. (*Id.* at ¶¶ 84, 86).

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . .

disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting *Iqbal*, 556 U.S. 679).

## IV. ANALYSIS

Defendant seeks to dismiss both counts of Plaintiff's Amended Complaint. The Court will address each count separately.

## A. Title IX

Defendant first moves to dismiss Plaintiff's claim under Title IX. Title IX of the Education Amendments of 1972 provides, in part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Consistent with Title IX, an education program or activity receiving federal financial assistance "may provide separate toilet, locker room, and shower facilities on the basis of sex, but such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex." 34 C.F.R. § 106.33. Although the only enforcement mechanism explicitly provided for in Title IX is administrative, see 20 U.S.C. § 1682, the Supreme Court has "recognized an implied private right of action under Title IX," and has "held that money damages are available in such suits," *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999). Nevertheless, "private damages actions are available only where recipients of federal funding had adequate notice that they could be liable for the conduct at issue." *Id.* at 640.

"To establish a prima facie case of discrimination under Title IX, a plaintiff must allege (1) that he or she was subjected to discrimination in an educational program, (2) that the program receives federal assistance, and (3) that the discrimination was on the basis of sex." *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 295 (W.D. Pa. 2017); see

also *Bougher v. Univ. of Pittsburgh*, 713 F. Supp. 139, 143-44 (W.D. Pa. 1989). "[T]he use by students of school restrooms is part and parcel of the provision of educational services covered by Title IX." *Evancho*, 237 F. Supp. 3d at 295.

Defendant first argues that because the government has withdrawn its prior guidance which had interpreted Title IX to require schools to allow transgender students to use the bathrooms that correspond with their gender identity, there is no legal basis to support a Title IX claim against a school district for transgender discrimination. (Doc. 12 at 5-7). The guidance to which Defendant refers is a January 7, 2015, letter issued by the Acting Deputy Assistant Secretary for Policy at the Department of Education, ("2015 Guidance"), and a letter jointly issued by the Department of Education and the Department of Justice on May 13, 2016. In particular, the May 13, 2016, letter "summarize[d] a school's Title IX obligations regarding transgender students and explain[ed] how the U.S. Department of Education (ED) and the U.S. Department of Justice (DOJ) evaluate[s] a school's compliance with these obligations." *See Dear Colleague Letter*, U.S. DEP'T OF JUSTICE & U.S. DEP'T OF EDUC., (May 13, 2016), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201605-title-ix-transgender.pdf ("2016 Guidance"). The 2016 Guidance specified that Title IX's prohibition on sex discrimination in educational programs and activities "encompasses discrimination based on a student's gender identity, including discrimination based on a student's transgender status," and that, under Title IX and 34 C.F.R. § 106.33, "[a] school may provide separate

[restroom and locker room] facilities on the basis of sex, but must allow transgender students access to such facilities consistent with their gender identity." *Id.* On February 22, 2017, however, the Department of Education and the Department of Justice issued another letter "withdrawing the statements of policy and guidance reflected in" the 2015 and 2016 Guidance "in order to further and more completely consider the legal issues involved." *See Dear Colleague Letter*, U.S. DEP'T OF JUSTICE & U.S. DEP'T OF EDUC., (February 22, 2017), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201702-title-ix.pdf ("2017 Guidance").

Defendant contends that in light of the 2017 Guidance, Plaintiff may not maintain her Title IX claim. (Doc. 12 at 5). The 2017 Guidance, however, "did not propound any 'new' or different interpretation of Title IX or [34 C.F.R. § 106.33], nor did the 2017 Guidance affirmatively contradict the 2015 and 2016 Guidance documents." *Evancho*, 237 F. Supp. 3d at 298. Instead, the 2017 Guidance "appears to have generated an interpretive vacuum pending further consideration by those federal agencies of the legal issues involved in such matters." *Id.* Thus, the fact that the Department of Justice and the Department of Education withdrew their interpretation of Title IX does not necessarily mean that a school, consistent with Title IX, may prohibit transgender students from accessing the bathrooms that are consistent with their gender identity. Instead, it simply means that the 2016 Guidance cannot form the basis of a Title IX claim.

9

Since the time the 2017 Guidance was issued, a district court within this circuit and the Court of Appeals for the Seventh Circuit have held that a claim under Title IX exists when a school prohibits a transgender student from using the bathroom corresponding with the student's gender identity. *See Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist.*, 858 F.3d 1034, 1046-50 (7th Cir. 2017); *Evancho*, 237 F. Supp. 3d at 283 n.23. In *Whitaker*, a school's unwritten policy prevented a seventeen-year-old transgender boy, Ash, from using the boy's bathroom. *Whitaker*, 858 F.3d at 1038-39. After the district court denied the school district's motion to dismiss and granted Ash's motion for a preliminary injunction which allowed him to use the boy's bathroom, the school district appealed. *Id.* at 1039. In deciding whether to uphold the preliminary injunction, the Seventh Circuit evaluated Ash's likelihood of success on his claim that the school's bathroom policy violated Title IX. *Id.* at 1046.

Observing that courts have "looked to Title VII when construing Title IX," the panel examined *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989), where "a plurality of the Supreme Court and two justices concurring in the judgment, found that the plaintiff had adequately alleged that her employer, in violation of Title VII, had discriminated against her for being too masculine." *Whitaker*, 858 F.3d at 1047. The Circuit then noted that "[f]ollowing *Price Waterhouse*, this court and others have recognized a cause of action under Title VII when an adverse action is taken because of an employee's failure to conform to sex stereotypes." *Id.* at 1048. Relying on this line of cases, the Court

10

held that Ash could proceed with his Title IX sex discrimination claim under a theory of sex-stereotyping:

> Ash can demonstrate a likelihood of success on the merits of his claim because he has alleged that the School District has denied him access to the boys' restroom because he is transgender. A policy that requires an individual to use a bathroom that does not conform with his or her gender identity punishes that individual for his or her gender non-conformance, which in turn violates Title IX. The School District's policy also subjects Ash, as a transgender student, to different rules, sanctions, and treatment than non-transgender students, in violation of Title IX. Providing a gender-neutral alternative is not sufficient to relieve the School District from liability, as it is the policy itself which violates the Act.

*Id.* at 1049-50.

Similarly, *Evancho* involved three transgender high school students who sought a preliminary injunction that would enjoin their school from enforcing a policy promulgated by the school board which required the students to use either a single-user bathroom or the bathroom that corresponded with the sex that the students were assigned at birth. *Evancho*, 237 F. Supp. 3d at 272-73. The Court denied the students' motion for a preliminary injunction on the basis of the Title IX claim,[1] holding that

> the law surrounding [34 C.F.R. § 106.33] and its interpretation and application to Title IX claims relative to the use of common restrooms by transgender students, including the impact of the 2017 Guidance, is at this moment so clouded with uncertainty that this Court is not in a position to conclude which party in this case has the likelihood of success on the merits of that statutory claim.

---

[1] The *Evancho* Court did, however, grant the students' motion for a preliminary injunction pursuant to their claim that the school's policy violated the Fourteenth Amendment. *Evancho*, 237 F. Supp. 3d at 295.

11

*Id.* at 301.

Nevertheless, the Court denied the school district's motion to dismiss the students' Title IX claim, holding that the students "made a more than sufficient 'showing' in their Complaint of a right to relief under . . . Title IX." *Id.* at 283 n.23. Indeed, citing a number of cases that have embraced a broad reading of the term "sex" as used in Title VII and Title IX, the Court concluded that the students "demonstrated a reasonable likelihood of showing that Title IX's prohibition of sex discrimination includes discrimination as to transgender individuals based on their transgender status and gender identity." *Id.* at 296-97. The Court clarified that the fact that it did "not at this juncture conclude that the Plaintiffs have a likelihood of success on the merits of their Title IX claim for preliminary injunction purposes means only that they have not passed over the bar for the entry of that extraordinary equitable remedy." *Id.* at 283 n.23.

Defendant does not attempt to distinguish *Evancho* and *Whitaker* or present any arguments as to why this Court should not follow their holdings. The Court, further, sees no reason why the analysis and holdings of either *Evancho* or *Whitaker* are unsound when applied to the facts of this case.[2] Therefore, the Court finds that Plaintiff's Amended

---

[2] Although not cited by Defendant, *Johnston v. University of Pittsburg of the Commonwealth System of Higher Education*, 97 F. Supp. 3d 657 (W.D. Pa. 2015), reached an opposite conclusion from *Evancho* and *Whitaker* and found that a transgender university student did not state a claim under Title IX when he alleged that he was denied access to the bathrooms and locker rooms that corresponded with his gender identity. *Johnston*, 97 F. Supp. 3d at 672. Because Defendant did not argue that this Court should apply *Johnston*, the Court need not engage in a detailed analysis of that case except to say that the Court finds the analysis in the more recent decisions of *Evancho* and *Whitaker* persuasive.

Complaint states a valid claim that Defendant violated Title IX by prohibiting Plaintiff from using the bathrooms that corresponded with her gender identity.

Defendant, however, argues that because there were no formal government directives as to how schools should accommodate the bathroom needs of transgender students during the relevant time period of Plaintiff's Amended Complaint, it is clear that Defendant made every reasonable effort to accommodate Plaintiff. (Doc. 12 at 7-8; Doc. 18 at 4-5). Defendant points out that, according to Plaintiff's Amended Complaint, Plaintiff was provided a unisex bathroom, the school voluntarily received education on the needs of transgender students, and, once the 2016 Guidance was issued, Defendant allowed Plaintiff to use the girl's bathroom.[3] (Doc. 12 at 7-8; Doc. 18 at 4-5).

Contrary to Defendant's argument, a specific practice need not be identified as unlawful by the government before a plaintiff may bring a claim under Title IX. See generally Evancho, 237 F. Supp. 3d at 283 n.23, 295-301. Nor does the provision of a gender neutral bathroom rectify a policy that otherwise violates Title IX. Whitaker, 858 F.3d at 1050. Further, while the Court recognizes that the Amended Complaint seems to indicate that

---

[3] Defendant also argues that it had no control over the bathrooms during the school field trips because the bathrooms were offered by outside facilities that were not connected with the school. (Doc. 12 at 8). At the pleading stage, such an argument is premature. Plaintiff's Amended Complaint alleges that on the field trip that took place in May of 2015, Plaintiff was required to use the boy's bathroom at the direction of school officials pursuant to Defendant's policy. (Doc. 10 at ¶¶ 34-42). Similarly, Plaintiff's Amended Complaint alleges that on the field trip that took place in March of 2016, a school official informed Plaintiff's mother that she would need to accompany Plaintiff on the field trip in order for Plaintiff to be allowed to use the girl's bathroom. (Id. at ¶¶ 71-73). Thus, the Amended Complaint claims that it was Defendant, and not the outside facility, which prohibited Plaintiff from using the girl's bathroom while on field trips.

13

Plaintiff now has access to the girl's bathroom at school and thus may not have alleged any continuing violation of Title IX, that does not undercut the fact that Plaintiff has adequately pleaded that a violation of Title IX occurred at some point in time.

To the extent that Defendant is arguing that the lack of formal guidance and the school's attempts to accommodate Plaintiff show that Defendant did not, as a matter of law, have discriminatory intent, this argument fails on two fronts. First, in a private cause of action brought pursuant to Title IX, "both injunctive relief and damages are available." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255, 129 S. Ct. 788, 172 L. Ed. 2d 582 (2009). While a plaintiff must prove discriminatory intent to receive money damages, there is no such requirement to receive injunctive relief. *See Seneway v. Canon McMillan Sch. Dist.*, 969 F. Supp. 325, 335 (W.D. Pa. 1997); *Stilley v. Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ.*, 968 F. Supp. 252, 265-66 (W.D. Pa. 1996). Thus, even if Plaintiff cannot establish any discriminatory intent, she can still seek injunctive relief. Second, Plaintiff has adequately pleaded the existence of discriminatory intent. Specifically, Plaintiff has alleged that Principal Yacobacci stated that it was his "job to protect all of the students from [Plaintiff]" and that Superintendent McBreen, referring to Plaintiff's use of the girl's bathroom, stated that "Minersville isn't ready for this." (Doc. 10 at ¶¶ 43, 56). This is sufficient at the pleading stage to allege that Defendant's bathroom policy was promulgated with discriminatory intent.

Accordingly, the Court will deny Defendant's Motion to Dismiss as it pertains to Plaintiff's Title IX claim.

## B. Fourteenth Amendment

Defendant next moves to dismiss Plaintiff's Fourteenth Amendment claim brought pursuant to 42 U.S.C. § 1983. To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate the violation of a right protected by the Constitution or laws of the United States, committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc). Section 1983 is not in itself a source of substantive rights, but instead provids a remedy for violations of rights protected by other federal statutes or by the U.S. Constitution. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985). Therefore, in evaluating a § 1983 claim, a court must first "'identify the exact contours of the underlying right said to have been violated' and . . . determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)). Here, Plaintiff has claimed that the school has violated her Fourteenth Amendment right to receive the equal protection of the laws.

The Fourteenth Amendment provides, in part, that no State may "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend XIV, § 1.[4] This

---

[4] The Fourteenth Amendment is fully applicable to public school districts and their employees. *See, e.g., Fitzgerald*, 555 U.S. at 258; *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 637, 63 S. Ct. 1178, 87 L. Ed. 1628 (1943) ("The Fourteenth Amendment, as now applied to the States, protects the

provision "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). However, "[t]he Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996). "As a result, the Supreme Court has 'attempted to reconcile the principle with reality' by prescribing different levels of scrutiny depending on whether a law 'targets a suspect class.'" *Evancho*, 237 F. Supp. 3d at 284 (quoting *Romer*, 517 U.S. at 631). When a government policy does not target a suspect class, courts should uphold the "classification so long as it bears a rational relation to some legitimate end." *Romer*, 517 U.S. at 631. When a policy "classifies by race, alienage, or national origin," however, it is "subjected to strict scrutiny and will be sustained only if [it is] suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. Similarly, "classifications based on gender also call for a heightened standard of review," and such a classification will "fail[ ] unless it is substantially related to a sufficiently important governmental interest." *Id.* at 440-41.

In light of the above, the "first step in evaluating a claim that a law or government action violates the Equal Protection Clause is to determine the appropriate standard of

---

citizen against the State itself and all of its creatures"); *Evancho*, 237 F. Supp. 3d at 284-85 ("The Equal Protection Clause is fully applicable to this public school district established and maintained under the laws of the Commonwealth of Pennsylvania"). Further, an Equal Protection claim can be based on government policies, including unwritten policies. *See, e.g., Hassan v. City of New York*, 804 F.3d 277, 295 n.5 (3d Cir. 2015).

16

review." *Donatelli v. Mitchell*, 2 F.3d 508, 513 (3d Cir. 1993). Here, both parties agree that the heightened standard of review, sometimes called the intermediate standard of review, applies. (Doc. 12 at 10; Doc. 14 at 11); *see also Evancho*, 237 F. Supp. 3d at 288 (holding that a classification system based on transgender status requires heightened scrutiny); *Whitaker*, 858 F.3d at 1051 ("[T]he School District's policy cannot be stated without referencing sex, as the School District decides which bathroom a student may use based upon the sex listed on the student's birth certificate. This policy is inherently based upon a sex-classification and heightened review applies."). Thus, the Court will hold that Defendant's bathroom policy does not violate the Equal Protection Clause if "the classification serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.'" *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724, 102 S. Ct. 3331, 73 L. Ed. 2d 1090 (1982) (quoting *Wengler v. Druggists Mutual Ins. Co.*, 446 U.S. 142, 150, 100 S. Ct. 1540, 64 L. Ed. 2d 107 (1980)).

Here, Defendant does not advance any important objective that its bathroom policy served. Instead, Defendant reiterates its argument that, in the absence of guidance from the government, Defendant made all reasonable efforts to accommodate Plaintiff. (Doc. 12 at 10). For the same reasons that this argument failed in the context of Title IX, it fails here. Plaintiff has adequately alleged the existence of a school policy that treated her differently on the basis of her transgender status or nonconformity to gender stereotypes. As such,

she has sufficiently stated a claim for relief under the Equal Protection Clause.[5] *See Evancho*, 237 F. Supp. 3d at 284-93 (holding that transgender students established a reasonable likelihood of success on an Equal Protection claim where the school district denied the students access to the bathrooms that corresponded with their gender identities); *Whitaker*, 858 F.3d at 1050-54 (same); *but see Johnston*, 97 F. Supp. 3d at 666-72 (granting university's motion to dismiss transgender student's Equal Protection claim which had alleged that he was denied access to the men's bathrooms and locker rooms on campus).

Accordingly, the Court will deny Defendant's Motion to Dismiss as it pertains to Plaintiff's Equal Protection claim.

## V. CONCLUSION

For the reasons outlined above, this Court will deny Defendant's Motion to Dismiss, (Doc. 11). A separate Order follows.

_____
Robert D. Mariani
United States District Judge

---

[5] To the extent that Plaintiff is required to allege purposeful discrimination to adequately plead her § 1983 claim, *see Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3rd Cir. 2005), Plaintiff has satisfied this burden by alleging that Principal Yacobacci stated that it was his "job to protect all of the students from [Plaintiff]" and that Superintendent McBreen, referring to Plaintiff using the girl's bathroom, stated that "Minersville isn't ready for this," (Doc. 10 at ¶¶ 43, 56).